RCK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | * | |
| v. | * | Civil No.________________ |
| FUNDS CONTAINED IN FOUR ACCOUNTS (Oldford Group et al),<br>Defendant. | * | |

...oo0oo...

VERIFIED COMPLAINT FOR FORFEITURE

The United States of America, through undersigned counsel, seeking forfeiture of the defendant funds contained in four accounts connected to internet gambling, hereinafter referred to as "defendant property," respectfully presents to the Court the following:

1. This Court has jurisdiction over this forfeiture action pursuant to 28 U.S.C. §§1345 and 1355.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1395(b).

3. The defendant property is:

A. The contents of Ranston Ltd account 16542263375 located at Basler Kantonalbank, Basel, Switzerland.

B. The contents of Ranston Ltd, account 16542254461 located at Basler Kantonalbank, Basel, Switzerland.

C. The contents of Oldford Group Limited, account 409380 located at Credit Agricole, Basel, Switzerland.

D. The contents of Albright Finance Ltd, account 0206-411465.60K located at UBS AG, Zuerich, Switzerland.

The defendant property is also identified in the annexed seizure warrant and affidavit, which are incorporated herein by reference. The apparent owners of these accounts are Ranston Ltd, Oldford Group Limited, and Albright Finance Ltd, as indicated in this paragraph.

4. The defendant property constitutes the proceeds of an illegal gambling business and is forfeitable pursuant to 18 U.S.C. sections 981(a)(1)(C) and 1955(d), and also it was involved in money laundering transactions made in violation of 18 U.S.C. section 1956(a)(2)(A) and is subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A) and 984.

5. The grounds for forfeiture as alleged in paragraph 4 is based upon, but not limited to, the evidence outlined in the attached Affidavit of M. Lisa Ward, U.S. Customs Special Agent, which is incorporated herein by reference.

**WHEREFORE**, the plaintiff prays as follows:

1. That any persons having an interest in the above-described defendant property be cited to appear herein and answer the Complaint;

2. That a Warrant of Arrest <u>in rem</u> issue to the Department of Homeland Security and Immigration and Customs Enforcement for the District of Maryland, as appropriate, commanding arrest of the defendant property and use of the current Mutual Legal Assistance

Treaty between Switzerland and the United States in order to request execution of the warrant of arrest in that country;

3. That Judgment of Forfeiture be decreed against the defendant property;

4. That upon Final Decree of Forfeiture, the Department of Homeland Security and Immigration and Customs Enforcement dispose of the defendant property according to law; and

5. That the plaintiff have such other and further relief as the case may require.

Respectfully submitted,
Rod J. Rosenstein
United States Attorney

10-29-09
Date

Richard C. Kay
Assistant United States Attorney
36 South Charles Street
Baltimore, Maryland 21201
Telephone: (410) 209-4800
Bar No. 06766

**VERIFICATION**

I, Richard C. Kay, declare under penalty of perjury as provided by 28 U.S.C. 1746, that the foregoing Complaint for Forfeiture in rem is based on reports and information furnished to me by the Department of Homeland Security and Immigration and Customs Enforcement, and that everything contained therein is true and correct to the best of my knowledge and belief.

Richard C. Kay
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
DISTRICT OF MARYLAND

In the Matter of the Seizure of
(Address or brief description of property to be seized)

**The contents of four bank accounts in Switzerland.**

**SEIZURE WARRANT**
CASE NUMBER: 09-3771 BPG

TO: M. Lisa Ward, Special Agent, United States Immigration and Customs Enforcement, and any Authorized Officer of the United States:

An Affidavit having been made before me by M. Lisa Ward, Special Agent, United States Immigration and Customs Enforcement, who has reason to believe that in Basel and Zuerich, Switzerland, there is now certain property which is subject to forfeiture to the United States, namely
(describe the property to be seized)

**the contents of the four bank accounts in Switzerland identified in ATTACHMENT A.**

I am satisfied that the affidavit establishes probable cause to believe that the property so described is subject to seizure and forfeiture and that grounds exist for the issuance of this seizure warrant.

YOU ARE HEREBY AUTHORIZED to seize within ten (10) days, the property specified, serving this warrant and making the seizure in the daytime - 6:00 AM to 10:00 PM - leaving a copy of this warrant and receipt for the property seized, and prepare a written inventory of the property seized and promptly return this warrant to any U.S. Magistrate Judge, as required by law.

Issued October 29, 2009, at Baltimore, Maryland, by
Date Issued

Honorable Beth P. Gesner
United States Magistrate Judge

09-3771 BPG

ATTACHMENT A

Accounts to be Seized

A. The contents of Ranston Ltd account 16542263375 located at Basler Kantonalbank, Basel, Switzerland.

B. The contents of Ranston Ltd, account 16542254461 located at Basler Kantonalbank, Basel, Switzerland.

C. The contents of Oldford Group Limited, account 409380 located at Credit Agricole, Basel, Switzerland.

D. The contents of Albright Finance Ltd, account 0206-411465.60K located at UBS AG, Zuerich, Switzerland.

**UNITED STATES DISTRICT COURT**
DISTRICT OF MARYLAND

In the Matter of the Seizure of
(address or brief description of property to be seized)

**The contents of four bank accounts in Switzerland.**

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**
CASE NUMBER: 09-3771 BPG

M. Lisa Ward, Special Agent, United States Immigration and Customs Enforcement, being duly sworn deposes and says:

I have reason to believe that there is now certain property in Basel and Zuerich, Switzerland, which is the subject of forfeiture to the United States, namely (describe property to be seized):

the contents of the four bank accounts in Switzerland identified in ATTACHMENT A,

which is (state one or more bases for seizure under the U.S. Code)

forfeitable pursuant to 18 U.S.C. sections 981(a)(1)(C) and 1955(d) because it constitutes the proceeds of an illegal gambling business and is forfeitable pursuant to 18 U.S.C. section 981(a)(1)(A) because it was involved in money laundering transactions made in violation of 18 U.S.C. section 1956(a)(2)(A).

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are set forth in the attached Affidavit.

M. Lisa Ward
Special Agent, United States Immigration and Customs Enforcement

Sworn to before me, and subscribed in my presence on (Date) October 29, 2009 at Baltimore, Maryland.

Honorable Beth P. Gesner
United States Magistrate Judge

ATTACHMENT A 09-3771 BPG

Accounts to be Seized

A. The contents of Ranston Ltd account 16542263375 located at Basler Kantonalbank, Basel, Switzerland.

B. The contents of Ranston Ltd, account 16542254461 located at Basler Kantonalbank, Basel, Switzerland.

C. The contents of Oldford Group Limited, account 409380 located at Credit Agricole, Basel, Switzerland.

D. The contents of Albright Finance Ltd, account 0206-411465.60K located at UBS AG, Zuerich, Switzerland.

09-3771 BPG

# Affidavit in Support of Seizure Warrants

## I. Purpose of the Affidavit

This Affidavit is submitted in support of a seizure warrant for the following accounts:

A. **The contents of Ranston Ltd account 16542263375 located at Basler Kantonalbank, Basel, Switzerland.**

B. **The contents of Ranston Ltd, account 16542254461 located at Basler Kantonalbank, Basel, Switzerland.**

C. **The contents of Oldford Group Limited, account 409380 located at Credit Agricole, Basel, Switzerland.**

D. **The contents of Albright Finance Ltd, account 0206-411465.60K located at UBS AG, Zuerich, Switzerland.**

Your affiant submits that there is probable cause to believe that this property constitutes the proceeds of an illegal gambling business and is forfeitable pursuant to 18 U.S.C. sections 981(a)(1)(C) and 1955(d), and also that it was involved in money laundering transactions made in violation of 18 U.S.C. section 1956(a)(2)(A) and is subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A).

## II. Affiant

Your affiant, M.Lisa Ward, has been a Special Agent with U.S. Customs/ICE for nineteen years. During that time, your affiant Ward has prepared and executed numerous state and federal search and seizure warrants, worked on Title III court- authorized intercepts, seized evidence of both state and federal violations, interviewed numerous suspects, witnesses, and informants, and evaluated evidence obtained during the course of these investigations.

## III. Applicable Statutes

18 U.S.C. section 1955
Conducting Illegal Gambling Business.

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined

09-3771 BPG

under this title or imprisoned not more than five years, or both.
(b) As used in this section-

(1) "illegal gambling business" means a gambling business which-

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuious operation for a period in excess of thirty days or has a gross revenue of $2000 in any single day.

(2) "gambling" includes but is not limited to poolselling, bookmaking.....

(3) "State" means any State of the United States.

* * *

(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States.

<u>Maryland Criminal Code section 12-102</u>
Betting, wagering, gambling and related activities.

(a) Prohibited. - A person may not:

(1) bet, wager or gamble;

(2) make or sell a book or pool on the result of a race, contest, or contingency;

* * *

(4) receive, become the depository of, record, register, or forward, or propose, agree, or pretend to forward, money or any other thing or consideration of value, to be bet wagered or gambled on the result of a race, contest, or contingency.

<u>Title 31 U.S.C. section 5363</u>
Unlawful Internet Gambling Enforcement Act

No person engaged in the business of betting or wagering may knowingly accept, in connection with the participation of another person in unlawful internet gambling -

* * *

(2) an electronic fund transfer, or funds transmitted by or through a money transmitting business, or the proceeds of an electronic funds transfer or money transmitting service, from or on behalf of such other person;....

<u>18 U.S.C. section 1084</u>
Transmission of wagering information

(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets, or wagers or information assisting in the placing or bets

09-3771 BPG

> or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined or imprisoned not more than two years, or both.

Title 18 U.S.C. section 1956(a)(2)(A)
Money laundering

> (2) Whoever … transmits … or attempts to transmit … funds … to a place in the United States from or through a place outside the United States -
> (A) with the intent to promote the carrying on of specified unlawful activity [shall have committed an offense].

Title 18 U.S.C. section 981
Asset forfeiture

> (a)(1) The following property is subject to forfeiture to the United States:
>
> (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 ... of this title, or any property traceable to such property.
>
> * * *
>
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## IV. Probable Cause

### Introduction

The information set forth below is based upon your affiant's review of records and upon information provided by other sworn law enforcement officers participating in this investigation. Your affiant has not included each and every fact obtained pursuant to this investigation. Your affiant has set forth those facts that she believes are essential to establish the necessary foundation for the issuance of the seizure warrant for the specified account.

### Background

ICE Special Agent Ward conducted an Internet search and found the following: (1) that there are dozens of Internet gambling sites, such

09-3771 BPG

as BODOG, Pokerstars, FullTilt, and Absolute Poker, that allow a gambler to play various games of chance and to wager on the outcome of various sporting events; (2) that these sites allow gamblers to use various forms of payment to wager and then to receive payouts for winning; (3) that these companies are all physically located outside of the United States while the majority of the customers are found in the United States. Because customers are in the United States, these businesses rely upon the U.S. banking system to facilitate the movement of funds to and from their customers, the gamblers.

Recent developments, including the account seizures described below, and the passage of the Unlawful Internet Gambling Enforcement Act of 2006, have made it increasingly difficult for Internet gaming operators to move money to and from their customers. Specifically, 31 U.S.C. section 5363 prohibited them from accepting nearly all forms of payment from players who gambled on their web-sites.

**Payment Processors**

Based on training and experience, the affiant knows that, in order to facilitate the movement of funds to and from their customers, Internet gambling operators began using money-processing businesses generally called "Payment Processors." Typically, an Internet gaming operator sends a large check or wire transfer directly to the payment processor who then distributes the money, at the direction of the gaming site operators, to gamblers for their winnings. This is accomplished either by check or electronic transfer. As is demonstrated below, many of these processors were created specifically to move gambling money since 2006.

**Gambling with BODOG**

On December 21, 2006, a Special Agent for IRS CI, acting in an undercover capacity ("the UCA") opened a "house" account with Bodog.com using an undercover bank account, which was debited to fund the "house" account. The Bodog web site stated that direct bank debits would be listed on the gambler's bank statement as going to Middleton Financial, Dover Finance, Lawson Finance, Newton Finance, or

09-3771 BPG

Wiltshire Finance. The web site also stated that credit card payments would be listed on the gambler's statement as payments to either Bodog, or Stratham Finance.

On December 21, 2006, the UCA placed two wagers on football games online with Bodog.com while the UCA was in Maryland. During the course of the next several months, the UCA continued to place wagers on sporting events and play casino games on Bodog.com, many of these from Maryland. As of January 2008, the UCA had placed more than 40 bets, with total wagers of more than $3,500.

In February 2007, a confidential informant (CI-1), who had been employed by a company that developed software for poker and casino games for BODOG in 2005 and 2006, personally observed that BODOG employs approximately 150 people in Costa Rica. Because CI-1 had worked with BODOG, CI-1 was able to observe the BODOG operations in Costa Rica. These people conduct the sports bookmaking operation for Bodog. According to this informant, BODOG takes in from $250,000 to millions of dollars per day on sports bookmaking alone.

**BODOG pays off: The Direct Channel account**

In February of 2007, the UCA requested a payout from his BODOG account in the amount of $1,500, to be paid to him by check. In March 2007, UCA received a check in the amount $1,500 as was requested. The check was drawn on a bank account maintained by Direct Channel LLC with Mercantile Bank in Clearwater, Florida. On April 6, 2007, the UCA learned that this check had bounced. The UCA then received an e-mail from BODOG advising him that the payment on this check was cancelled due to an error, and that a replacement check would be sent.

Bank records pertaining to the Direct Channel LLC account indicated 10 wire transfers were received from MPS Processing Ltd account at HSBC Bank in London from the period February 14, 2007 through February 28, 2007 totaling over $2.5 million. During this same period, there were numerous smaller checks issued from the account, which is characteristic of gambling payouts by a payment processor.

09-3771 BPG

## The JBL Services accounts

In March 2007, the UCA received a replacement check by mail in Maryland. This check was drawn on an account maintained with the Bank of North Georgia. The paying entity listed on the check was JBL Services Inc./Cumberland Finance, with a listed address of 12600 Deerfield Parkway, Suite 100, Alpharetta, GA, 30004, and a phone number of 1-866-480-7667. The check was signed by Michael Garone. When the UCA tried to deposit this check, it bounced. The UCA contacted BODOG, and received a new check, dated April 19, 2007, drawn on an account maintained with SunTrust Bank. The paying entity on the second check was listed as JBL/Dorset Finance, with a listed address of 12600 Deerfield Parkway, Suite 100, Alpharetta, GA, 30004, and a phone number of 1-866-480-7659. This check was also signed by Michael Garone. This check did not bounce, and was deposited by the UCA. This demonstrates that BODOG, through various entities, was sending money to Michael Garone, who operated as a funds processor in Alpharetta, Georgia, using several different business names, including JBL Services and Transaction Solutions.

In October 2007, government agents interviewed another confidential informant (CI-2), who admitted that he was a highly-placed person in MPS Processing Ltd, which was incorporated in the United Kingdom, and was processing payouts on behalf of BODOG, and that Stratham Finance was a financing company for BODOG. CI-2 stated that MPS Processing received funds from Stratham Finance and transferred them to Direct Channel in the United States, which would then print and mail the payout checks.

In October 2007, the UCA requested another payout from BODOG in the amount of $700, to be paid by check. The UCA received the requested check in November of 2007. The listed paying entity was JBL/Lawson Finance, at the same Deerfield Parkway address as that listed on the earlier checks, and a phone number of 1-866-480-7660. The check was drawn on a SunTrust Bank account, and was signed by Michael Garone.

09-3771 BPG

On January 18, 2008, The Honorable Beth P. Gesner, United States Magistrate Judge for the District of Maryland, issued seizure warrants for the contents of eight JBL Services bank accounts located in Alpharetta, Georgia, on grounds that the accounts were involved in the processing of proceeds from Internet gambling, particularly from BODOG. Approximately $14 million was seized from these accounts and the funds were subsequently the subject of an order of forfeiture.

After the seizure of the JBL Services accounts, government agents interviewed a confidential informant who is different from CI-1 and CI-2, and who was employed by JBL Services in at least 2007 into 2008, and this informant stated that JBL Services was formed to process payments on behalf of Internet gambling, particularly BODOG. This demonstrates that BODOG was operating an illegal gambling business in Maryland in violation of 18 U.S.C. section 1955. It also demonstrates that BODOG was engaged in the movement of funds to Maryland in violation of 18 U.S.C. sections 1084 and 1956, and 31 U.S.C. section 5363.

**Electracash, the Business**

Special Agent Ward interviewed cooperating individual SA-890-BA, who had been personally involved in processing gambling payouts for BODOG at least in 2007 and into 2008. According to SA-890-BA, Electracash Inc. ("Electracash") also was processing transactions for BODOG and other illegal on-line gaming operators of the same size, such as Pokerstars, Full Tilt, and Absolute Poker. SA-890-BA further stated that Electracash is a business organized in California and operated by D. Lee Falls. Electracash has a public website that presently identifies its business location in the United States at 2501 Cherry Avenue, Suite 360, in Signal Hill, California 90755. During 2007 and into 2008, SA-890-BA handled some check-processing operations for BODOG and worked in conjunction with Lee Falls and Electracash to process collections and payouts of gambling money; SA-890-BA, therefore, had frequent business contacts with Falls and Electracash.

09-3771 BPG

**Electracash Inc. and BODOG**

SA-890-BA described the following: (1) At some point after November 2006, D. Lee Falls and Electracash worked in conjunction with individuals working for BODOG and other gambling companies to create shell companies abroad to facilitate the collection and distribution of the illegal gambling funds in the United States. (2) In order to layer the illegal activity to make it more difficult to detect, numerous bank accounts at multiple banks were opened by Falls/Electracash to transfer the funds. (3) In addition to transferring funds, Electracash provided support documentation necessary for these shell companies to comply with U.S. banking and anti-money laundering "know-your-customer" regulations. (4) These documents falsely identified the off-shore source and destination accounts as non-gambling businesses.

**ELECTRACASH AND OTHER ONLINE GAMBLING OPERATIONS**

SA-890-BA also stated that all money transferred by Electracash that originated from **EGALO** or **GESCOMO** were gambling proceeds collected on behalf of BODOG to be paid to consumers for gambling payouts. According to SA-890-BA, all funds transferred between Electracash and the following shell companies were funds involved in Internet gambling conducted by BODOG, Poker Stars, Absolute Poker and Full Tilt Poker: Intabill, Green Fairmont, Cedar Crest Management Group, Litchfield Enterprises, and Ledvil Investments. Special Agent Ward has reviewed bank records that confirm incoming funds from all of these sources. Special Agent Ward has examined bank records that show that Electracash maintained accounts at City National Bank, Interstate Net Bank (ISN Bank), First Premier Bank, and Bank of America.

**Electracash at City National Bank**

Records pertaining to an Electracash account at City National Bank indicate that between January 2007 and May 2008, Electracash received in excess of $26 million from GESCOMO Inc. of Montréal Canada. Between June 2007 and May 2008, the account also received in excess of $43 million from EGALO of Dublin, Ireland. Correspondence

for each EGALO transaction further identified Greenmount Enterprises as the beneficiary.

**Electracash at Bank of America: account 02093-41305.**

Bank records indicate that Electracash maintained account number 02093-41305 at Bank of America in Anaheim, California. These records indicate that the contact agent for Electracash is D. Lee Falls and that the mailing address for statements is 2501 Cherry Avenue, Suite 360 in Signal Hill, California. As is mentioned above, BODOG moved gambling funds from GESCOMO and EGALO offshore to Electracash and some of these funds were expressly for the benefit of Greenmount Enterprises. Bank of America records from January 2007 through August 2008 pertaining to account 02093-41305 show the transfer of funds from both the Electracash City National Bank account and directly from Greenmount Enterprises. This demonstrates that the Bank of America account was also used to move gambling proceeds in violation of 18 U.S.C. section 1956(a)(2)(A).

**Electracash, BOA, and Allied Wallet Ltd.**

Bank records from January 1, 2009, through May 18, 2009, show that the Electracash Bank of America account was primarily funded during this period by large deposits from a U.S.-based company known as Allied Wallet. Special Agents of the FBI informed Special Agent Ward that their records indicate that Allied Wallet is a payment processor for several online gambling sites including Poker Stars. For just the period between April 1st and May 18th, 2009, the Electracash account received a total of more than $19 million from Allied Wallet accounts.

According to bank records, the last transaction between Allied Wallet and Electracash was an incoming wire transfer in the amount of $375,000 on June 1, 2009. On June 4, 2009, the Federal Bureau of Investigation executed a search warrant at Allied Wallet's business location and seized a number of bank accounts on grounds that they were involved in money laundering and illegal gambling. On July 20,

09-3771 BPG

2009, The Honorable James K. Bredar, United States Magistrate Judge for the District of Maryland, issued seizure warrants for seven Electracash bank accounts, including the Bank of America 02093-41305 account.

**Electracash and Oldford Group Limited**

Bank records from January 2009 through June 2009, show that most of the funds that were wire-transferred out of the Electracash Bank of America account, went to **account 409380 in the name of Oldford Group Limited at Credit Agricole in Basel, Switzerland.** The total funds transferred during this period were in excess of $21 million. The records also show that for a two-week period in June 2009, **Oldford Group Limited transferred approximately $4.5 million dollars to Electracash**, which then transferred the funds to HMD Inc. at Wells Fargo Bank. Records for the HMD account confirm the receipt of the funds and show that between June 22 and 30th there were over 3090 checks issued totaling $1.78 million and most of these were even dollar amounts and under $1,000, which is consistent with payouts of gambling winnings. HMD account records for July 2009 indicate that another $4.4 million was wired-transferred from the Electracash Bank of America account and that approximately twelve thousand checks then were issued totaling $3.2 million. This demonstrates that **account 409380 in the name of Oldford Group Limited at Credit Agricole in Basel, Switzerland** was engaged in, and involved in, the movement of gambling business proceeds in violation of 18 U.S.C. sections 1084 and 1956, and 31 U.S.C. section 5363.

The HMD Wells Fargo records also indicate that between July 14 and August 14, 2009, four outgoing wire transfers totaling $97,200 were made **to UBS AG account 0206411465.60K in the name of Albright Finance Ltd in Zuerich, Switzerland.** Electracash records for Bank of America account 0293-41305 also show transfers **to Albright Finance in Zuerich, Switzerland**, during the same period totaling $176,391. This demonstrates that **UBS AG account 0206411465.60K in the name of Albright Finance Ltd in Zuerich, Switzerland** was engaged in, and

09-3771 BPG

involved in, the movement of gambling business proceeds in violation of 18 U.S.C. sections 1084 and 1956, and 31 U.S.C. section 5363. On August 14, 2009, The Honorable Susan K. Gauvey, U.S. Magistrate Judge, issued a seizure warrant for the Wells Fargo HMD bank account; the warrant was executed on August 17th.

**Search Warrant at Electracash**

On July 20, 2009, special agents and task force officers of the Immigration and Customs Enforcement executed a search warrant at the offices of Electracash Inc. at 2501 Cherry Ave., #360 in Signal Hill, California. During the search, agents found papers in the office that were identified as belonging to Lee Falls, including several pages of printed email communications between James Davitt and another person that apparently took place on June 11, 2009. These communications consisted of a line-by-line dialogue about Electracash, abbreviated as "EC." They talk about trying to find another payment processor because of problems with "EC" and a "need to cover our ass." James Davitt says, "What I am saying is the rates they [EC] charging us are high. We need to watch the heat make sure the fed doesn't go backward and connect the dots. We knew that already but last week was just a reminder." Just days before, New York FBI agents seized millions of dollars from payment processor Allied Wallet. This indicates that Davitt was involved in the processing of gambling funds with Electracash.

The dialogue continued about various customers that each of them had been in contact with, including "PS" and "FT". According to SA-890-BA, it is common email usage to use "PS" to refer to PokerStars and "FT" to refer to Full-Tilt Poker. James Davitt said that PS "was looking for payment solutions" but that he did not take the account because it might interfere with something else they were working on. James Davitt said that FT asked him if he offered C21, which is another form of processing payments, but that he did not take that account because he knew that "Lee" was presenting it to them. James Davitt continued to say that he was doing business with FT, but not in

any area where Lee has offered service. Davitt said that he was doing checks and credits only.

Bank records pertaining to the Wells Fargo HMD Inc. account mentioned above indicate that this account was opened under the name of HMD, Inc, 5500 Bolsa Avenue, Suite 201, Huntington Beach, California 92649, and that James P. Davitt is 100% owner and has sole signature authority. Those same Wells Fargo HMD account records show two outgoing wire transfers dated July 29th and 31st, 2009, in amounts of $500,000 and $250,000 respectively, from the Wells Fargo account to Citibank NA account 203154851. Citibank records confirm that HMD, Inc., maintains Citibank NA account 203154851 and that the account was opened in Long Beach, California. Records pertaining to this Citibank NA account show that between July 1st and July 31, 2009, there were approximately 3000 checks issued totaling approximately $1.35 million, which is consistent with payouts of gambling winnings.

Citibank and Wells Fargo records also indicate that on July 3rd and 7th, 2009 two wire transfers in the amount of $400,000 and $480,000 respectively were made from the Citibank NA account 203154851 to the HMD Inc. account at Wells Fargo Bank. The Wells Fargo records also showed that between July 1st and July 31st, 2009, during this period when the account was funded by both the Electracash account and the Citibank NA account 203154851, there were approximately 12,000 checks issued totaling approximately $3.2 million. Most of these checks were in even dollar amounts and under $1000, which is, as outlined above, consistent with payouts of gambling winnings. I reviewed just a small portion of the cancelled checks for this account and found ten checks addressed to residents of Maryland. An ICE agent interviewed some of these check recipients in Maryland and all those interviewed confirmed that the checks were payouts for online gambling winnings. This demonstrates that HMD Inc. was using the Citibank NA account in the movement of gambling funds to Maryland in violation of 18 U.S.C. sections 1084 and 1956, and 31 U.S.C. section 5363.

09-3771 BPG

The Citibank HMD Inc. account 203154851 records also show that between June 8th and August 17th, 2009, the account received $5,504,287 from **Ranston Ltd account 16542263375 at Basler Kantonalbank of Basel, Switzerland.** As is mentioned above, this is the same period when HMD transferred funds from this Citibank account to the HMD account at Wells Fargo from which HMD issued thousands of checks consistent with payouts of gambling winnings. On August 24, 2009, seven days after the seizure warrant was executed on the HMD account at Wells Fargo, HMD sent a $970,000 wire transfer from the HMD Citibank account to **Ranston Ltd, Frohburgster 24, CH8832 Wollerau Switzerland at Basler Kontonalbank account 16542254461.**

Records pertaining to two HMD accounts at the Bank of America showed that one account received $1,695,139 and another account received $1,592,251, and that both transfers were **from Ranston Ltd at Basler Kantonalbank of Switzerland.** Both incoming wire transfers originated **from account 16542263375.** The records also showed that the funds within the first account were disbursed by way of nearly 10,000 checks that ranged primarily in amounts of $100 to $2,500 that were payable to multiple individuals throughout the United States, which is consistent with payouts of gambling winnings. These transfers are the same as the transfers outlined above that move the gambling funds to an account for dispersal to various gamblers or to another account. This demonstrates that **the Ranston Ltd bank accounts 16542254461 and 16542263375 at the Basler Kantonalbank, Basel, Switzerland,** were engaged in, and involved in, the movement of gambling business proceeds in violation of 18 U.S.C. sections 1084 and 1956, and 31 U.S.C. section 5363.

## Commingled Funds

Your affiant knows that courts have held that there is no requirement that a substantial portion of the commingled funds in an account be derived from the criminal activity, so long as there is some evidence that some of the commingled funds were from criminal activity. United States V. Ward, 197 F.3d 1076 (11th Cir. 1999). The

09-3771 BPG

Fourth Circuit has also stated that when funds are drawn from a commingled account, the government is entitled to a presumption that the transaction involves criminally derived funds. United States v. Wilkinson, 137 F.3d 214 (4th Cir. 1998).

Your affiant knows that in forfeiture cases, the probable cause standard is the same as that in search and seizure cases, requiring a court "'to make a practical, common-sense decision whether, given all the circumstances set forth ... there is a fair probability' that the properties to be forfeited are proceeds of illegal ... transactions." United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir. 1990)(drug case).

**Out of state and off-shore warrants**

Based upon my training and experience, I know that 18 U.S.C. section 981(b)(3) provides that "a seizure warrant may be issued ... by a judicial officer in any district in which a forfeiture action against the property may be filed under Section 1355(b) of title 28, and may be executed in any district in which the property is found, or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement." According to 28 U.S.C. Section 1355(b), a forfeiture action may be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred...." Because some of the gambling transactions were conducted in Maryland and some of the payouts of gambling proceeds were mailed to Maryland, the forfeiture action can be brought in Maryland, and the seizure warrants may be issued in Maryland. Your affiant intends to use this affidavit in support of a complaint in a judicial civil forfeiture case to cause the issuance of a warrant of arrest in rem, pursuant to Rule G(3)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, by the U.S. District Court that directs the Department of Justice to use the current Mutual Legal Assistance Treaty between the United States and Switzerland in order to request execution of the warrant of arrest in rem in that country.

09-3771 BPG

V. Conclusion

Based on the foregoing, I submit that there is probable cause to believe that the following property constitutes the proceeds of an illegal gambling business and is forfeitable pursuant to 18 U.S.C. sections 981(a)(1)(C) and 1955(d), and also that it was involved in money laundering transactions made in violation of 18 U.S.C. section 1956(a)(2)(A) and is subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A):

A. **The contents of Ranston Ltd account 16542263375 located at Basler Kantonalbank, Basel, Switzerland.**

B. **The contents of Ranston Ltd, account 16542254461 located at Basler Kantonalbank, Basel, Switzerland.**

C. **The contents of Oldford Group Limited, account 409380 located at Credit Agricole, Basel, Switzerland.**

D. **The contents of Albright Finance Ltd, account 0206-411465.60K located at UBS AG, Zuerich, Switzerland.**

M. Lisa Ward
Special Agent
Immigration and Customs Enforcement

Subscribed and sworn before me on October 29, 2009.

Beth P. Gesner
United States Magistrate Judge

DATE: October 29, 2009

TO: Paula Rigby/ Tracy Roy
Customs and Border Protection

FROM: Naquita Ervin
Paralegal Specialist

RE: **U.S. v. Funds Contained in Four Accounts (Oldford Group et al)**
**Civil Action No. ____________**

**CATS ID/CASE NO:**

---

The United States has filed a forfeiture action against **Funds Contained in Four Accounts (Oldford Group et al).** A copy of the Complaint for Forfeiture is attached.

Notice of this seizure will be published at **www.forfeiture.gov** pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

Thank you.

Attachment

# Department of Homeland Security

*Federal Law Enforcement Agencies*

## PROCESS RECEIPT AND RETURN

| PLAINTIFF<br>UNITED STATES OF AMERICA | COURT CASE NUMBER |
|---|---|
| DEFENDANT<br>Funds Contained in Four Accounts<br>(Oldford Group et al) | TYPE OF PROCESS<br>Verified Complaint in Rem |

| SERVE AT | |
|---|---|
| | Name Of Individual, Company, Corporation, Etc. to Serve or Description of Property to Seize |
| | Address (Street or RFD / Apt. # / City, State, and Zip Code) |

| Send NOTICE OF SERVICE copy to Requester: | | |
|---|---|---|
| Naquita Ervin, Paralegal Specialist<br>U.S. Attorney's Office<br>36 S. Charles Street, 4th floor<br>Baltimore, Maryland 21201 | Number Of Process To Be Served In This Case. | |
| | Number Of Parties To Be Served In This Case. | |
| | Check Box If Service Is On USA | |

SPECIAL INSTRUCTIONS or OTHER INFORMATION TO ASSIST IN EXPEDITING SERVICE (includes Business and Alternate Addresses, Phone Numbers, and Estimated Availability times.)

Arrest property and insert date into Notice of Forfeiture Action that will be published. Fill in the date of arrest in this process receipt and return our copy.

| Signature of Attorney or other Originator requesting service on behalf of [ X ]Plaintiff [ ]Defendant | Telephone No.<br>(410) 209-4800 | Date<br>Oct 29, 2009 |
|---|---|---|
| SIGNATURE OF PERSON ACCEPTING PROCESS: | | Date |

**SPACE BELOW FOR USE OF TREASURY LAW ENFORCEMENT AGENCY**

| I acknowledge receipt for the Total # of Process Indicated. | District of Origin No. ____ | District to Serve No. ____ | SIGNATURE OF AUTHORIZED TREASURY AGENCY OFFICER: | Date |
|---|---|---|---|---|

I hereby Certify and Return That I [ ] PERSONALLY SERVED, [ ] HAVE LEGAL EVIDENCE OF SERVICE, [ ] HAVE EXECUTED AS SHOWN IN "REMARKS", the Process Described on the Individual, Company, Corporation, Etc., At The Address Shown Above or at the Address Inserted Below.

[ ] I HEREBY CERTIFY AND RETURN THAT I AM UNABLE TO LOCATE THE INDIVIDUAL, COMPANY, CORPORATION, ETC. NAMED ABOVE.

| NAME & TITLE of Individual Served If not shown above: | [ ] A Person of suitable age and discretion then residing in the defendant's usual place of abode. | |
|---|---|---|
| ADDRESS: (Complete only if different than shown above.) | Date of Service | Time of Service [ ] AM [ ] PM |
| | Signature, Title and Treasury Agency | |

**REMARKS:**

TD F 90-22.48 (6/96)

*Make (5) copies after form is signed. SEND ORIGINAL + 4 COPIES to TREASURY AGENCY. Retain Copy #5 for your file.*